## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**JOHNNIE L. BRUTON**

　　　　**Plaintiff,**

**vs.**                                                    **1:06-cv-00068-SPM**

**GAINESVILLE HOTEL MANAGEMENT, LLC.,**
**a Florida Corporation, d/b/a PARAMOUNT**
**PLAZA HOTEL & SUITES**

　　　　**Defendant.**

_____/

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant's motion for

summary judgment, (Doc. 22), filed April 17, 2007, and Plaintiff's memorandum

in opposition, (Doc. 34), filed May 18, 2007.  For the reasons set forth below, the

motion is denied.

### I.  BACKGROUND

On August 18, 2005, Plaintiff Johnnie L. Bruton, an African-American

male, was Executive Chef for Defendant, Gainesville Hotel Management, LLC, at

Defendant's Paramount Plaza Hotel and Suites (Paramount) in Gainesville,

Florida.  (Doc. 1 at 3; Doc. 34 at 3; Doc. 44-4 at 2.)  Plaintiff's employment at the

Paramount began in 2003, when Mr. Harry Greenlee, Paramount's General

Manager, hired Plaintiff as Sous Chef.  (Doc. 29 at 1; Doc 34 at 3.)  Plaintiff was

promoted to Executive Chef, a department-manager-level position, upon Mr.

Greenlee's recommendation. (Doc. 29 at 1, 5.)  The Executive Chef

responsibilities were to manage the Paramount's food preparation by scheduling

and supervising the kitchen staff and ordering food.  (Doc. 29 at 2; Doc 44-4 at 3-

5.)

　　　　On April 2005, Defendant hired Ms. Darla Monaco, a white female, as

Food and Beverage Director of the Paramount, a department-manager-level

position as well.  (Doc. 29 at 1; Doc. 34 at 3.)  Ms. Monaco was responsible for

managing the Paramount's restaurant and exercising oversight over food and

beverage costs.  (Doc. 29 at 1-2; Doc 34 at 3-4; Doc. 44-4 at 6.)  Due to the

complementary nature of their respective positions, Plaintiff and Ms. Monaco had

to work together.  (Doc. 29 at 2; Doc 34 at 4.)

　　　　As Paramount's General Manager, Mr. Greenlee had supervisory

responsibility over all department managers.  (Doc. 29 at 1.)  Mr Greenlee in turn

reported to Paramount owner Mr. William Polidoro who was located in Boca

Raton, Florida.  (Doc. 22 at 2; Doc 29 at 1; Doc 34 at 5.)  Also located in Boca

Raton was Mr. Paul Pizzi, the Paramount's Operation Manager.  (Doc 44-3 at 3.)

　　　　On January 2, 2005, Mr. Greenlee published a memorandum requiring all

department managers to attend a weekly Banquet Event Order (BEO) meeting

every Thursday at 1:00 p.m.  (Doc. 29 at 5.)  On Thursday, August 18, 2005,

Plaintiff did not attend the BEO meeting.  (Doc. 44-4 at 11.)  That same day,

sometime around noon, Plaintiff made a written complaint with Ms. Shannon Head, Paramount's human resources representative, concerning Ms. Monaco's behavior towards Plaintiff.  (Doc. 22 at 5; Doc. 41 at 3.)  Plaintiff's complaint stated that on a number of occasions Ms. Monaco had told Plaintiff that items of clothing "look[ed] good on [Plaintiff's] black ass."  (Doc. 22 at 5; Doc. 41 at 1.)  According to Plaintiff, he put a copy of the complaint in Mr. Greenlee's mailbox approximately at 12:45 p.m.  (Doc. 22 at 5.)  Also on August 18, 2005, Ms. Monaco notified Paramount's management and owners of Plaintiff's absence from the BEO meeting via a memorandum.  (Doc. 29 at 8.)

The next day, Friday, August 19, 2005, Mr. Polidoro e-mailed Mr. Greenlee.  (Doc. 29 at 9.)  In his e-mail Mr. Polidoro expressed his concern with Plaintiff's conduct and inquired of Mr. Greenlee whether to "have [Ms. Monaco] fire or suspend [Plaintiff] or [whether Mr. Greenlee] would . . . like [Mr. Polidoro] to do it."  (Doc. 29 at 9.)  Mid-morning that Friday Mr. Greenlee personally suspended Plaintiff from work.  (Doc. 29 at 3.)

On Monday, August 22, 2005, Mr. Greenlee notified Plaintiff via telephone of Plaintiff's termination.  (Doc. 29 at 3.)  In a memorandum drafted the same day, Mr. Greenlee stated Plaintiff was terminated for failing to communicate with fellow managers, unprofessional conduct in front of Plaintiff's staff, and inability to properly manage personnel and costs.  (Doc. 29 at 16.)

Plaintiff filed an action for damages (Complaint) with this Court on April 12, 2006, after obtaining a Right to Sue letter from the Miami District Office of the

Equal Employment Opportunity Commission on January 25, 2006.  (Doc. 1; Doc. 1-2.)  In his Complaint Plaintiff alleged negligent supervision and violations of the Civil Rights Act of 1964, 42 U.S.C. §§ 2002e-2(a)(1), 2002e-3(a)(1), the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, FLA. STAT. ch. 760, and the Fair Labor Standards Act, 29 U.S.C. § 201.  (Doc. 1 at 5-13.)  In its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Memorandum), Plaintiff dismissed all counts except the counts of retaliation under the Civil Rights Act of 1964, 42 U.S.C. § 2002e-3(a)(1) (Title VII claim), the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Florida Civil Rights Act of 1992, FLA. STAT. ch. 760.[1]  (Doc. 34 at 1 n.1.)

## II. DISCUSSION

### A.  Standard of Review for a Motion for Summary Judgment

Upon a motion for summary judgment, a district court renders judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact."  Fed.R.Civ.P. 56(c).  A genuine issue of fact is present whenever the facts properly before the court could allow a

---

[1]Title VII and § 1981claims are analyzed using the same framework of analysis. *Anduze v. Florida Bd. of Regents*, 151 F. App'x 875, 878 (11th Cir. 2005) (*citing Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Similarly, analysis of Title VII claims is applicable to claims under the Florida Civil Rights Act. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998).  Therefore the instant analysis of Plaintiff's Title VII, § 1981 and Florida Civil Rights Act retaliation claims will focus exclusively on the Title VII claim.

reasonable person to find for the nonmoving party.  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is a fact that is outcome-determinative under the applicable law.  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (*citing Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997)).  Therefore, mere factual disputes that do not present a genuine issue as to material facts are disregarded.

Initially the moving party bears the burden of establishing the absence of genuine issues of material fact.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  If at trial the moving party would bear the burden of proving an issue, on motion for summary judgment it must make an affirmative showing that there is no genuine issue of material fact.  *Id.* (*quoting U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).  If the non-moving party would bear the burden, the moving party may merely point to the court the non-moving party's failure to establish any genuine issue of material fact.  *Id. at* 1115-16. (*quoting Four Parcels*, 941 F.2d at 1437-38).  In determining whether the moving party has carried its burden, a court views the evidence in the light most favorable to the non-moving party and makes all reasonable inferences in the non-moving party's favor.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (*citing Walker v. Nations Bank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)).

If the moving party carries its initial burden, the non-moving party has the

responsibility to show a genuine issue of material fact. *Fitzpatrick*, 2 F.3d at 1116. If the moving party would bear the burden at trial, the non-moving party must present evidence denying the moving party's affirmative showing. *Id.* If the non-moving party would bear the burden two different scenarios are possible. If the moving party merely pointed to the non-moving party's lack of evidence, the non-moving party may either show that the record contained sufficient evidence or it may present additional evidence. *Id.* at 1116-17. If instead the moving party made an affirmative showing, the non-moving party must respond with additional evidence establishing the presence of a genuine issue of material fact. *Id.* at 1117.

The judicial benchmark for summary judgment is "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson,* 477 U.S. at 252 (1986) (*quoting Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). The presence of the merest shred of evidence in support of a party's position is insufficient - "[it] must be evidence on which the jury could reasonably find for [that party]." *Id.* When considering the evidence, a court ruling on a motion for summary judgment must take into account the pertinent substantive evidentiary standard. *Id.* at 254. Thus, the court must consider the quantity and quality of evidence that under the applicable law would allow a reasonable jury to find for the plaintiff. *Id.*

**B.  Title VII Retaliation Claim**

To further Title VII's goal of avoiding discrimination in the workplace, 42 U.S.C. § 2000e-3(a) makes it illegal for an employer to discriminate against an employee in retaliation for the employee's opposition to a practice unlawful under Title VII.  42 U.S.C. § 2000e-3(a)(1).  Under 42 U.S.C. § 2000e-2(a)(1) severe or pervasive racially-based discriminatory behavior that creates a hostile work environment and alters an individual's conditions of employment is an unlawful employment practice.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).  Consequently, an employee's opposition to racial harassment in the workplace is protected under § 2000e-3(a) and it is illegal for an employer to retaliate against an employee for such opposition.  *See Generally Mendoza*, 195 F.3d at 1244-45.

Title VII claims predicated on circumstantial evidence are analyzed under a burden-shifting framework meant to reconcile the statute's goal of eliminating employment discrimination with the employer's freedom to take necessary personnel actions.  *See Generally Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992).  Under this three-step process, the plaintiff has the initial burden of making a prima facie case of retaliation.  *Id.*  The plaintiff's success creates a rebuttable presumption of retaliation and shifts the burden to the defendant who must come forth with legitimate nondiscriminatory reasons to rebut the presumption.  *Id.* at 1547-48.  Defendant's proffer of legitimate non-retaliatory reasons shifts the burden back to the plaintiff who must then rebut defendant's non-retaliatory rationale.  *Id.* at 1548.

### 1.  Plaintiff's Prima Facie Case of Retaliation

To make a prima facie case of retaliation for opposing an unlawful employment practice a plaintiff has to show (1) opposition to a practice unlawful under Title VII; (2) adverse employment action against plaintiff; and (3) a causal connection between plaintiff's opposition and the adverse employment action. *Brown v. City of Opelika*, 211 F. App'x 862, 863 (11th Cir. De. 14, 2006) (*quoting Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)).  To avoid discouraging employees from asserting their rights under Title VII, a plaintiff bringing a claim of retaliation need not prove the actual unlawfulness of the opposed employment practice.  *Gupta,* 212 F.3d at 586 (*quoting Meeks v. Computer Assocs. Int'l.*, 15 F.3d 1013, 1021 (11th Cir. 1994)); *Little v. United Techs., Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (*quoting Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir.1978)).  It is sufficient for the plaintiff to show a good faith reasonable belief that the practice opposed was unlawful.  *Gupta* at 586; *Little*, at 960 (*quoting Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)).

### a.  Plaintiff's Good Faith Belief of Opposition to Racial Harassment

In a claim of retaliation, a plaintiff's belief of opposition to an unlawful employment practice must be both objectively and subjectively reasonable. *Anduze*, 151 F. App'x at 878 (*quoting Little*, 103 F.3d at 960).  To determine the objective reasonableness of a plaintiff's belief, the Eleventh Circuit Court of Appeals looks at existing, applicable substantive law.  *Id.* (*quoting Clover v. Total*

*Sys. Serv., Inc.* 176 F.3d 1346, 1351 (11th Cir. 1999)).  Thus, courts determining the reasonableness of the plaintiff's belief that its employer engaged in racial harassment look at the elements of a Title VII claim of harassment and consider whether:

> [plaintiff] belongs to a protected group; (2) . . . has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of [plaintiff]; (4) the harassment was 'sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;' and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability.

*Id.* at 878 (*quoting Miller  v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).  However, the opposed practice need not legally rise to the level of discrimination; it merely has to come "close enough to support an objectively reasonable belief that it [did]."  *Adams v. Cobb County Sch. Dist.*, No. 06-15103, 2007 WL 1720430 (11th Cir. Jun. 15, 2007) (*quoting Clover*, F.3d at 1351).

Defendant moves for summary judgment alleging Plaintiff's evidence is insufficient to support a good faith reasonable belief that the complained-of conduct by Ms. Monaco constituted an unlawful employment practice.  (Doc. 22 at 17.)  Specifically, Defendant argues that Ms. Monaco's comments were insufficiently pervasive or severe to create a hostile environment altering the terms and conditions of employment.  (Doc. 22 at 15.)  Defendant also argues that Ms. Monaco's conduct was not attributable to Defendant because Ms. Monaco was Plaintiff's co-worker.  (Doc. 22 at 15.)

**1)  Pervasiveness or Severeness of Alleged Racial Harassment**

When determining whether specific conduct altered the terms and

conditions of employment, courts consider "(1) the frequency of the conduct; (2)

[its] severity; (3) whether the conduct [was] physically threatening or humiliating,

or a mere offensive utterance; and (4) whether the conduct unreasonably

intefere[d] with . . . job performance." *Mendoza*, 195 F.3d at 1246.  The analysis

is factually intense, and calls for courts to consider individual acts not in isolation

but in light of all the circumstances.  *Id.*

Occasional extemporaneous derogatory remarks in everyday conversation

do not rise to the level of legally-actionable conduct.  *Miller*, 277 F.3d at 1277

(*citing Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  The record in

the instant case presents a genuine issue whether Ms. Monaco's racially-based

comments were mere isolated colloquial utterances or a pervasively frequent part

of Plaintiff's work environment.  Defendant points to Plaintiff's apparent

inconsistency in alleging in his racial harassment complaint comments by Ms.

Monaco "#3 DIFFERENT TIMES" and Plaintiff's later deposition testimony of

daily episodes over a five-month period.  (Doc. 22 at 16.)   Faced with a factual

discrepancy a district court ruling on a motion for summary judgment determines

if the discrepancy is a sham or an issue of credibility.  *Tippens v. Celotex Corp.*,

805 F.2d 949, 953 (11th Cir. 1986).  A sham is found when a party's later

testimony contradicts previous unambiguously clear testimony establishing the

absence of a genuine issue of material fact.  *Id.* at 953 (*quoting Van T. Junkins &*

*Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)).  Plaintiff's frequency

statement in his workplace complaint was not so clear and devoid of ambiguity

that the Court must find Plaintiff's equally ambiguous deposition testimony a

sham.  In the absence of further evidence attesting to the frequency or

infrequency of the comments, the matter hinges on Plaintiff's credibility or lack

thereof.  Questions of credibility belong to the purview of the jury.  *Id.* at 954.

Conduct actionable as harassment does not need to be so severe that it

tangibly affects job performance.  *Miller*, 277 F.3d at 1277 (*citing Harris*, 510 U.S.

at 22).  Defendant argues that the content of the three comments referenced in

Plaintiff's harassment complaint was not sufficiently offensive to alter Plaintiff's

terms and conditions of employment.  (Doc. 22 at 15.)  Defendant's attack on the

severeness of the harassing conduct focuses exclusively on Plaintiff's racial

harassment complaint.  However, the conduct complained of by Plaintiff is not

limited to those three comments.  (Doc.  34 at 14)  In determining the severeness

of allegedly harassing conduct, a court ruling on a motion for summary judgment

does not consider individual behavior in isolation and must view all evidence in

the light most favorable to the Plaintiff.  The Court finds that the totality of the

instant conduct comes sufficiently close to the level of severity requisite for an

actionable claim of harassment.  Ms. Monaco's comments were allegedly

humiliating to Plaintiff because they were made in front of other employees.

(Doc. 34 at 14; Doc. 37-2 at 16.)  Ms. Monaco allegedly also undermined

Plaintiff's on-the-job performance by dismissing or excusing Plaintiff's cooking

staff.  (Doc. 34 at 14.)  According to Plaintiff, this resulted in heightened levels of stress and forced Plaintiff to alter his work priorities in order to accomplish his job.  (Doc. 34 at 14.)

### 2) Defendant's Responsibility for the Alleged Racial Harassment

In a claim of retaliation for opposition to racially-harassing conduct, there is no violation of Title VII if the employer is not responsible for the conduct. *Anduze*, 151 F. App'x at 876.  If the harasser is a co-worker, an employer will be liable only if the employer knew or should have known about the harassment and did not take appropriate action.  *Miller*, 277 F.3d at 1278 (*citing Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir.  2000)).  Defendant in its Motion suggests it is not responsible for Ms. Monaco's conduct because Ms. Monaco and Plaintiff were "equals."  (Doc. 22 at 15.)  However, there is a genuine issue as to whether Ms. Monaco stood in a supervisory or co-worker capacity to Plaintiff.

Plaintiff states that Ms. Monaco was his equal in authority.  (Doc. 44-4 at 6.)  Similarly, in his affidavit Mr. Greenlee declares that Ms. Monaco was not Plaintiff's supervisor.  (Doc. 29 at 2.)  Nevertheless, Mr. Polidoro in his deposition has difficulty characterizing the relationship as one of equals and fails to conclusively characterize it as such.  (Doc. 44-3 at 3.)  Furthermore, a memorandum written by Ms. Monaco in the wake of Plaintiff's absence from the August 18, 2005 BEO entitled "EMPLOYEE COUNSELING" identifies Plaintiff as "EMPLOYEE."  (Doc. 29 at 8.)  Finally, in an e-mail written after learning about

Plaintiff's last BEO absence, Mr. Polidoro inquired of Mr. Greenlee whether to
"have [Ms. Monaco] fire or suspend [Plaintiff] or [whether Mr. Greenlee] would . .
. like [Mr. Polidoro] to do it."  (Doc. 29 at 9.)  These discrepancies and
contradictions regarding Ms. Monaco's nominal employment status and actual
functional responsibilities could lead a reasonable jury to conclude that Ms.
Monaco was Plaintiff's supervisor.

### 3) Plaintiff's Subjective Belief

To be actionable, harassing behavior must be subjectively perceived by
the victim as abusive.  *Miller* , 277 F.3d at 1276 (*quoting Harris*, 510 U.S. at 21-
22).  While courts consider failure to report harassing behavior relevant to a
determination of subjective belief the failure is not always dispositive.  *See id.*  In
the instant case, the record shows that Plaintiff did not attempt to report Ms.
Monaco's behavior to either Mr. Greenlee or Mr. Polidoro before Plaintiff filed his
racial harassment complaint.  (Doc. 22 at 16-17; Doc. 41 at 8-9; Doc. 44-4 at 8.)
However, Plaintiff allegedly personally confronted Ms. Monaco about her
interference with Plaintiff's staff.  (Doc. 41 at 8-9.)  Likewise, on at least one
occasion Plaintiff complained in writing to Ms. Monaco about her dismissal of
Plaintiff's employees.  (Doc. 41 at 9; Doc. 44-4 at 12.)  Consequently, making all
reasonable inferences in Plaintiff's favor the Court cannot conclude that there is
no genuine issue of material fact regarding Plaintiff's subjective belief.

### b.  Causal Connection Between Opposition and Termination

To establish a connection between opposition to an unlawful employment

practice and an adverse employment action, a Plaintiff must show the decision-maker had knowledge of Plaintiff's opposition.  *De Long v. Best Buy Co. Inc.*, 211 F. App'x 856, 857 (11th Cir. Dec. 13, 2006) (*quoting Gupta*, 212 F.3d at 590).  To do so the Plaintiff may rely on circumstantial evidence.  *Morgan*, 959 F.2d at 1547 (*citing* Perryman v. Johnson, 698 F.2d 1138 (11th Cir. 1983)). Absent unrebutted evidence denying the decision-makers' knowledge, close temporal proximity between opposition and retaliation may suffice to establish a genuine issue of a causal connection.  *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Defendant alleges that Plaintiff's evidence of a causal connection between Plaintiff's racial harassment complaint and Plaintiff's suspension and discharge is insufficient.  (Doc. 22 at 18.)  According to Defendant, Plaintiff fails to show that Mr. Greenlee actually knew of the workplace complaint.  (Doc. 22 at 18.)  Plaintiff alleges that Mr. Greenlee and Mr. Polidoro knew about the complaint at the time of Plaintiff's suspension because Paramount's human resources representative, Ms. Head, knew about it and Plaintiff placed a copy in Mr. Greenlee's mailbox at Ms. Head's behest.  (Doc. 41 at 3-5.)  While the moving party in a motion for summary judgment may merely point to the insufficiency of the nonmoving party's evidence on an issue in which the nonmoving party carries the burden at trial, Plaintiff's evidence in the instant case is not insufficient.  Notwithstanding Mr. Greenlee's denial, a jury could reasonably infer that Mr. Greenlee either received the complaint Plaintiff placed in his mailbox or learned of its contents

from Ms. Head and was thus aware of the complaint the day he suspended Plaintiff.  Since the record shows that Mr. Greenlee was the ultimate decision-maker, (Doc. 29 at 10, 11, 14, 16), whether Mr. Greenlee's decision to terminate Plaintiff was causally related to Plaintiff's complaint is a genuine issue of material fact.

Viewing all evidence in the light most favorable to Plaintiff and making all reasonable inferences in his favor, the record presents genuine issues of material fact.  A reasonable jury could find that Plaintiff carried his burden of making a prima facie case of retaliation giving rise to a presumption of retaliatory intent and shifting the burden to Defendant to rebut the presumption.

### 2.  Defendant's Rebuttal of Plaintiff's Prima Facie Case

To rebut the presumption of retaliatory intent a defendant has to proffer legitimate reasons for taking the adverse employment action.  *See Brown*, 211 F. App'x at 863.  The defendant's burden is exceedingly light as it is neither a burden of proof nor of persuasion.  *Morgan*, 959 F.2d at 147-48.  All the defendant has to do is produce credible evidence in support of the proffered legitimate reasons.  *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501-02 (11th Cir. 1990).

Defendant argues Plaintiff's suspension and termination were the result of Plaintiff's failure to attend the weekly BEO meeting, inability to properly manage labor costs, and poor work attitude.  (Doc. 22 at 13.)  In a memorandum dated August 22, 2005, Mr. Greenlee enumerated his reasons for Plaintiff's termination.

(Doc. 29 at 16.).  Accordingly, Plaintiff was terminated for missing several BEO meetings without explanation, failing to communicate with fellow managers, unprofessional conduct in front of Plaintiff's staff, and inability to properly manage personnel and costs.  (Doc. 29 at 16.).  In support of its non-discriminatory rationale, Defendant points to several documents that predate Plaintiff's complaint as evidence of an ongoing situation that culminated in Plaintiff's termination.

In a memorandum dated January 2, 2005, Mr. Greenlee informed all department managers of the need to attend the weekly BEO meetings.  (Doc. 29 at 5.)  According to Mr. Greenlee's affidavit, Mr Greenlee personally discussed with Plaintiff the necessity to attend the meetings.  (Doc. 29 at 2.)  On August 18, 2005, Ms. Monaco notified Paramount's management and owners via memorandum of Plaintiff's failure to attend that day's BEO meeting.  (Doc 22 at 9; Doc. 29 at 8).  In the memorandum, Ms. Monaco also discussed Plaintiff's previous failures to attend the meeting.  (Doc. 29 at 8.)  The next day, in an e-mail to Mr. Greenlee, Ms. Monaco, and Ms. Head, Mr. Polidoro expressed concern with Plaintiff's conduct.  (Doc. 29 at 9.)  Later that same day, Mr. Pizzi inquired of Mr. Greenlee the reasons for Plaintiff's suspension.  (Doc. 29 at 11.)  Mr. Greenlee cited Plaintiff's lack of respect for fellow managers, failure to attend the BEO meeting, failure to control costs, and failure to communicate as the reasons for Plaintiff's suspension.  (Doc. 29 at 11.)

Mr. Pizzi had previously expressed concern with Plaintiff's demeanor in an

e-mail exchange with Mr. Greenlee on May 31, 2005.  (Doc. 29 at 7.)  Mr.

Greenlee reassured Mr. Pizzi that Plaintiff was just having difficulty adjusting to a

new situation and that the demeanor was nothing more than a coping

mechanism.  (Doc. 29 at 7.)  Mr. Greenlee alluded in his response to a

conversation with Plaintiff in which allegedly Mr. Greenlee had reminded Plaintiff

of the deference shown to Plaintiff by giving Plaintiff a raise and "not screaming

about the food cost out of whack and your high labor costs." (Doc. 29 at 7.)

The Court finds that a reasonable jury could find that Defendant satisfies

its burden of proffering legitimate non-retaliatory reasons for terminating Plaintiff.

The evidence offered by Defendant is sufficiently credible to dispel the

presumption of retaliation.  *See Brown*, 211 F. App'x at 863.

### 3.  Plaintiff's Rebuttal of Defendant's Non-Retaliatory Rationale

To overcome a defendant's non-retaliatory rationale, a plaintiff must show

that the defendant's reasons were a pretext masking a retaliatory motive.  *Id.*

The plaintiff need not prove that retaliation was the sole motive, *Lincoln* v. Bd. of

Regents of the Univ. Sys. of Ga., 697 F.2d 928, 938 (11th Cir. 1983), and the

defendant's legitimate non-retaliatory reasons are not dispositive if the plaintiff's

act of opposition is among them.  *Bigge*, 894 F.2d at 1503 n.20.  The plaintiff's

burden is to persuade the trier of fact that retaliation was a significant factor in

the defendant's decision.  *Id.* at 1502.  However, the plaintiff will not carry the

burden through mere reliance on the prima facie case and denial of defendant's

credibility.  *Howard v. BP Oil Co.*, 32 F.3d 520, 525-26 (11th Cir. 1994).  The

plaintiff carries the burden by challenging the defendant's non-retaliatory rationale head-on; that is, by showing that retaliation more likely than the defendant's proffered reasons motivated the defendant's actions or by showing the defendant's reasons to be unbelievable. *Morgan*, 959 F.2d at 1548; *De Long*, F. App'x at 858. This requires the plaintiff "to go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial." *Howard*, 32 F.3d at 526 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Plaintiff points to the deposition of Mr. Ralph McKnight, Plaintiff's fellow Department Manager during Plaintiff's tenure with Defendant, as evidence of Defendant's pretextual rationale. (Doc. 34 at 21.) Mr. McKnight was Defendant's Banquet Manager and as such was required to attend the weekly BEO meetings. (Doc. 29 at 5; Doc. 37-2 at 5-6.) In his deposition, Mr. McKnight acknowledged missing BEO meetings several times during the period relevant to this case without disciplinary consequences. (Doc. 42 at 1-2, 4.) Plaintiff argues that this unequal treatment of two similarly situated individuals acting in a similar fashion is clear evidence of pretext. (Doc. 34 at 22-23.)

While Plaintiff need not prove a claim of disparate treatment in order to show pretext, consideration of the analytical foundations of such a claim is instructive in the instant case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (indicating that when both white and black employees engaged in comparably serious conduct, and the white employees were retained or rehired but the black employees were not, that evidence was particularly relevant to

show pretext).  When considering the similarity of a plaintiff's misconduct to that

of a comparator's courts consider whether the compared misconducts are nearly

identical in terms of quality and quantity.  *See Mack v. St. Mobile Aerospace*

*Eng'g, Inc.*, 195 F. App'x 829, 844-45 (11th Cir. Jul. 31, 2006) (*quoting Mannicia*

*v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  In doing so courts look at the

totality of the misconduct and not a particular isolated act of misconduct to

determine the similarity between a plaintiff's misconduct and a would-be

comparator's.  *See McAlister v.Hillsborough County Sheriff*, 211 F. App'x 883,

886 (11th Cir. Dec. 20, 2006) (noting that a would-be comparator's three

offenses compared with a plaintiff's six was a factor failing to make the compared

conducts nearly identical).

     The record shows that both Plaintiff and Mr. McKnight were required to

attend BEO meetings and that both failed to do so on several occasions.  The

record also shows that failure to attend BEO meetings was among Defendant's

reasons to terminate Plaintiff and that Mr. McKnight received no disciplinary

action for similar failures.  What is not clear is whether Defendant's additional

reasons for Plaintiff's termination make the totality of Plaintiff's misconduct

qualitatively and quantitatively so different from Mr. McKnight's that they

foreclose any reasonable inference of pretext.

     Defendant argues Plaintiff's absence of August 18, 2005 was the

culmination of a history of poor managerial performance, work attitude, and

previous absences from BEO meetings.  However, besides Defendant's

performance references in post-suspension correspondence, the only other references to Plaintiff's performance in the record is a series of e-mails from May 31, 2005 and Mr. Greenlee's affidavit testimony to that effect.[2]  Absent from the record is any history of documented performance deficiencies, performance counseling, disciplinary actions, or any further discussion of Plaintiff's performance and attitude prior to August 18, 2005.  The absence of such evidence is particularly noteworthy because Ms. Head had Plaintiff make his harassment complaint on an "Employee Counseling/Disciplinary Record" form. (Doc. 29 at 17.)  The existence of the form indicates that formal performance feedback and assessment were established protocols at the Paramount.  The scant pre-suspension evidence of Plaintiff's professional failings, Defendant's apparently dissimilar treatment of Mr. McKnight's absences, and Plaintiff's suspension the day after his racial harassment complaint, present a genuine issue of fact about the motives that underlay Plaintiff's suspension and termination.

In his Memorandum Plaintiff mentions Defendant's acknowledged satisfaction with Plaintiff's performance as further proof of the pretextual nature of Defendant's stated suspension and termination rationale.  (Doc. 34 at 23.)  Aside

---

[2]In his affidavit Mr. Greenlee alleges eight months of poor performance prior to termination. (Doc 29. at 2.)  Defendant's Statement of Material facts alleges three months. (Doc 22 at 4.)  Nonetheless, both Mr. Greenlee's affidavit and Defendant's Statement of Material Facts coincide in identifying the May 31, 2005 e-mails as the only pre-suspension evidence of Plaintiff's alleged performance shortcomings in the record.

from Plaintiff's references in his own deposition to such expressions of satisfaction, the record does not contain other evidence to that effect.  However neither does it contain evidence to the contrary beyond what has been previously discussed.

Plaintiff's claims regarding his meeting with Mr. Polidero are partially inconsistent with Plaintiff's deposition testimony.  It is undisputed, however, that Plaintiff did receive with other Paramount employees a bonus check from Mr Polidero early in August, 2005.  (Doc.44 at 12-13.)  The presentation of the bonus, its temporal proximity to the decision to suspend and terminate Plaintiff, and the record's sole pre-suspension and termination performance reference could lead a reasonable jury to find Defendant's non-retaliatory rationale a pretext.

Considering all the evidence, the record before the Court offers a genuine issue for a jury to consider whether Plaintiff's racial harassment complaint was a significant factor leading to his suspension and termination.  Based on the evidence discussed, a reasonable jury could find that Plaintiff's racial harassment complaint and not his performance was the more likely reason for his suspension and termination.  Alternatively, a reasonable jury could also disbelieve Defendant's argument that Plaintiff's performance and attitude were the true reasons for his discharge.

In reaching its decision the Court has not taken into account Plaintiff's Declaration of Johnnie L. Bruton (Declaration) because it was not notarized.

(Doc. 36-2.)

An affidavit must: (a) be based on personal knowledge; (b) set forth such facts that would be admissible in evidence; (c) show that the affiant is competent to testify to the matters stated therein; (d) be signed by the affiant; and (e) be accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public.

*Bryant v. Orlando Sentinel Commc'ns Co.*, No. 6:05-cv-1710-Orl-19UAM, 2007

WL 1796258 at *5 (M.D. Fla. Jun. 20, 2007) (*citing* Fed.R.Civ.P. 56(e);

Fed.R.Evid. 902(8)).

Accordingly it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion for Summary Judgment, (Doc. 22), is hereby denied.

2. Defendant's request to strike (Doc. 39) Plaintiff's Declaration, (Doc. 36-2), and motion for leave to file reply (Doc. 38), is hereby granted.

3. Defendant's motion for leave to file deposition and responses (Doc. 44) is granted.

4. Plaintiff's motion to strike and for leave to reply (doc. 45) is denied.

**DONE AND ORDERED** this <u>18th</u> day of July, 2007.

  *s/ Stephan P. Mickle*

Stephan P. Mickle
United States District Judge